UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>    v.<br><br>JONALYN MONTIEL NGUYEN,<br><br>    Defendant. | Case No. 21-cv-04336-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Pending before the Court is Defendant Jonalyn Montel Nguyen's motion to dismiss. Dkt. No. 16. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

### I.  BACKGROUND

On June 8, 2021, Plaintiff Brian Whitaker filed this case against Defendant, who owns Prettybby Beauty in Milpitas, California. Dkt. No. 1. Plaintiff amended the complaint on July 30, 2021. *See* Dkt. No. 15 ("FAC"). Plaintiff, a quadriplegic who uses a wheelchair for mobility, alleges that he went to the shop in May 2021 and purchased "over $100 [] worth of products." *See id.* at ¶ 8. However, Plaintiff alleges that at the time, the sales counter was 43 inches tall, and therefore too high for him to access easily in his wheelchair. *See id.* at ¶¶ 10–13. To complete his transaction, he had to "rais[e] his arms over his shoulders, causing him difficulty and discomfort." *See id.* at ¶ 13. Plaintiff further alleges that the store had a portable, lowered counter that it could have used for those requiring accommodation, but did not use it. *See id.* at ¶¶ 12, 15. Plaintiff suggests that Defendant may not have used this lowered counter because it would have "interfere[d] with access to products and sales items displayed on shelving." *See id.* at ¶¶ 14–15.

1  Plaintiff's amended complaint acknowledges that since he filed this case, Defendant has
2  provided a lowered sales counter. *See id.* at ¶¶ 16–17. However, Plaintiff notes that this counter
3  is on wheels and alleges that it "could be removed from use in mere moments simply by detaching
4  it and wheeling it away." *See id.* at ¶¶ 17, 20. Plaintiff also suggests that there are alternative
5  accommodations that could "provide a greater level of access," though he does not identify them.
6  *See id.* at ¶ 20. Plaintiff states that because of Defendant's "past practice of not deploying and not
7  using the lowered counter," he will not return to Plaintiff's store until Defendant "has altered its
8  practices and credibly removed the possibility of returning to its past practices of discrimination."
9  *See id.* at ¶ 21. Plaintiff further speculates that "there are other violations and barriers on the site
10 that relate to his disability," and he will amend the complaint once he conducts a further site
11 inspection. *See id.* at ¶ 23.

12 Based on these allegations, Plaintiff brings causes of action for violations of (1) the
13 Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; and (2) the Unruh
14 Civil Rights Act, Cal. Civ. Code §§ 51–53. Defendant now moves to dismiss the complaint under
15 Federal Rule of Civil Procedure 12(b)(1). *See id.* at ¶¶ 24–33.

**II.   DISCUSSION**

Defendant argues that the Court lacks subject matter jurisdiction over this case and that Plaintiff lacks Article III standing to pursue his ADA claim. More specifically, Defendant contends that the ADA action is moot because the store's sales counter now fully complies with the ADA's requirements. *See* Dkt. No. 16-1 at 11–15. Defendant also argues that Plaintiff lacks standing because he has not adequately alleged an intent to return to the store. *See id.* at 10–11. Lastly, Defendant argues that the Court should dismiss Plaintiff's state law claim for lack of supplemental jurisdiction. *See id.* at 15–19.

**A.   Mootness**

Defendant first moves to dismiss Plaintiff's ADA claim under Federal Rule of Civil 12(b)(1), arguing that the claim is moot because the alleged ADA violation no longer exists now that the store has a lower sales counter. Dkt. No. 16-1 at 11–15. "Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or

2

1   live controversy exists." *See Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quotation
2   omitted).  In support of Defendant's motion, she provides several photographs of a lower sales
3   counter, with a ruler depicting a width of more than 36 inches and a height of 30 inches.  *See* Dkt.
4   No. 16-3 at ¶¶ 11–15, & Ex. 4.  Defendant further states in her declaration that "[t]he lower
5   counter has been affixed to the taller counter and will remain as a permanent fixture."  *See id.* at
6   ¶ 15.  Defendant's position is that "Plaintiff wanted a lower counter," and now "he has one for the
7   [] day he might return."  *See* Dkt. No. 16 at 2.

8   Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of
9   subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be either
10  facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court
11  is permitted to look beyond the complaint to consider extrinsic evidence.  *See Wolfe v. Strankman*,
12  392 F.3d 358, 362 (9th Cir. 2004); *Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d
13  1036, 1040 n.2 (9th Cir. 2003).  In a factual challenge "the challenger disputes the truth of the
14  allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for*
15  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In evaluating a factual attack, "[t]he
16  court need not presume the truthfulness of the plaintiff's allegations."  *Id.*  However, the Ninth
17  Circuit has cautioned that "[j]urisdictional dismissals in cases premised on federal-question
18  jurisdiction are exceptional." *Id.* (quotation omitted).

19  Defendant acknowledges that here, the jurisdictional facts overlap with the merits of the
20  case.  Dkt. No. 16-1 at 12–13.  The existence of barriers is both a jurisdictional and substantive
21  issue.  Defendant further acknowledges that the Court accordingly "'must apply the summary
22  judgment standard in deciding the motion to dismiss.'"  *See* Dkt. No. 16-1 at 12–13 (quoting
23  *Johnson v. Cal. Welding Supply Inc.*, 2011 WL 5118599, at *3 (E.D. Cal. Oct. 27, 2011)).
24  Nevertheless, Defendant contends that there is no genuine dispute as to any material fact because
25  Plaintiff did not provide his own, competing evidence.  *See id.*  Under General Order No. 56,
26  however, all discovery is still stayed.  Plaintiff also indicates that the parties have not conducted
27  the site inspection yet, *see* Dkt. No. 19 at 6, and Defendant does not appear to contest this.
28  Plaintiff, therefore, has not had an opportunity to develop the evidence he may need to rebut

Defendant's asserted facts. The Court is not inclined to decide the merits of Plaintiff's case before the site inspection has occurred or before any discovery has been taken.

Moreover, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). In applying the "voluntary cessation" doctrine in the ADA context, districts courts have engaged in fact-intensive inquiries about the nature of the alleged barriers and modifications. Courts have found mootness where, for example, the defendant made structural modifications that are unlikely to change. *See, e.g.*, *Johnson v. Opa Campbell LP*, No. 21-CV-01619-PJH, 2021 WL 3493712, at *3 (N.D. Cal. Aug. 9, 2021). These courts have reasoned that "[p]hysical alterations by nature are more permanent and it is far less likely that defendants could immediately reconstruct the barriers once the claim has been dismissed." *Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-CV-06015-DMR, 2021 WL 148237, at *4 (N.D. Cal. Jan. 15, 2021). In contrast, "courts have been more reluctant to find that an ADA plaintiff's claims have been mooted where the alleged barriers are not structural in nature, since nonstructural barriers (such as policy changes or features on a website) are more likely to reoccur." *Id.* at *3 (collecting cases).

Even if the new counter is compliant, there appears to be a factual dispute about the permanence of the alteration. Other than Defendant's self-serving declaration that the new counter "will remain as a permanent fixture," *see* Dkt. No. 16-2 at ¶ 15, there is little evidence in the record before the Court that the counter could not be moved, resulting in the recurrence of the alleged barrier. As Plaintiff alleges in the complaint, the new, lower counter is on wheels and it appears that it "could be removed from use in mere moments by simply detaching it and wheeling it away." *See* FAC at ¶ 17. From the pictures that Defendant provides, the lower counter also appears to be blocking some inventory in the store. *See* Dkt. No. 16-8, Ex. 4-4. Plaintiff alleges that Defendant thus "has a business reason for not using the lowered [] 'accessible' counter for customers . . . ." FAC at ¶ 15. At this stage, the Court finds that Defendant has not met her heavy burden of establishing that it is "absolutely clear" that the barrier will not recur. The Court

4

1 **DENIES** Defendant's motion on this basis, without prejudice to raising this argument again at the summary judgment stage.

### B. Standing

Defendant next argues that Plaintiff lacks standing to bring an ADA claim or seek injunctive relief. *See* Dkt. No. 16-1 at 10–12. The Court notes that other than generically citing the legal standard for standing, however, Defendant makes no substantive argument regarding standing in the motion to dismiss. Rather, Defendant waited until the reply brief to clarify and provide factual support for her argument. This is improper, and the Court does not credit arguments raised for the first time in reply. Nevertheless, because this is a recurring issue in ADA cases, the Court briefly addresses this argument.

A disabled person claiming access discrimination must establish Article III standing to maintain a suit under the ADA. *See Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Because the only remedy available to a private litigant under the ADA is an injunction, the Ninth Circuit has held that a plaintiff "must demonstrate a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946 (quotations omitted). He may do so by establishing that he has suffered an "injury-in-fact coupled with an intent to return," or alternatively, "deterrence from returning to the premises." *Id.* at 944.

Defendant first argues that Plaintiff lacks standing because there is no risk of future injury because the access barriers no longer exist. *See* Dkt. No. 16-1 at 10–12, 14. As the Court explained above, however, it is premature for the Court to determine whether the new counter is sufficient to eliminate the alleged access barrier and moot the case. Defendant also argues that Plaintiff cannot show a real and immediate threat of repeated injury because he has failed to establish either a genuine intent to return or that he has been deterred from returning to Plaintiff's store. *See* Dkt. No. 16-1 at 10–12; *see also* Dkt. No. 21 at 4–7. In support of this argument, Defendant cites the distance of the store from Plaintiff's residence and the indefinitiveness of his

1    plans to return.  *See* Dkt. No. 21 at 5.  At bottom, however, Defendant appears to suggest that the

2    Court should look skeptically at Plaintiff's intent to return to the store based on his prior history of

3    litigating ADA claims.  *See id.*

4          The Ninth Circuit has specifically cautioned courts against relying on a plaintiff's past

5    ADA litigation as a reason to question the sincerity of a plaintiff's intent to return to an

6    establishment.  *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008).

7    In *D'Lil*, the Court explained that "[f]or the ADA to yield its promise of equal access for the

8    disabled, it may indeed be necessary and desirable for committed individuals to bring serial

9    litigation advancing the time when public accommodations will be compliant with the ADA."  *Id.*

10         Here, Plaintiff says that he will return to the store "to avail himself of its goods or services

11   and to determine compliance with the disability access laws once it is credibly represented to him

12   that the [store] and its facilities are accessible.  *See* FAC at ¶ 22.  Defendant further cites

13   declarations from Plaintiff in other cases describing his visits to Northern California and his desire

14   to move to the area.  *See* Dkt. No. 21 at 5–6.  The Court finds that these allegations, when

15   considered in the light most favorable to Plaintiff, as they must be at this stage, constitute more

16   than mere speculation, as Defendant claims.  Plaintiff has adequately alleged an intention to return

17   to the store.  *See D'Lil*, 538 F.3d at 1037 (finding allegations sufficient to establish standing

18   "where a plaintiff demonstrates an intent to return to the geographic area where the

19   accommodation is located and a desire to visit the accommodation if it were made accessible");

20   *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1038 (9th Cir. 2008) (finding plaintiff had standing

21   despite living 550 miles from the 7-Eleven at issue).

22         The Court understands that Defendant questions Plaintiff's motivation to return to the

23   store, but that is distinct from Plaintiff's *intention* to return.  *See D'Lil*, 538 F.3d at 1037.  The

24   Ninth Circuit has explicitly stated that a plaintiff's status as an "ADA tester" does not deprive him

25   of standing because "motivation is irrelevant to the question of standing under Title III of the

26   ADA."  *See Civ. Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir.

27   2017).  Defendant is of course free to challenge the sincerity of Plaintiff's intention to return to the

28   store later in this litigation, but the Court declines to make credibility determinations at this

preliminary stage.[1]

### C. Supplemental Jurisdiction

Because the Court denies Defendant's motion to dismiss Plaintiff's federal claims for lack of subject matter jurisdiction, it does not reach Defendant's argument that the Court lacks supplemental jurisdiction over the state law claim. *See* Dkt. No. 16-1 at 15–17. But Defendant also urges the Court to decline supplemental jurisdiction over Plaintiff's state law claim. *See id.* at 17–19. The Court is not persuaded.

Defendant argues that "exceptional circumstances" exist to decline supplemental jurisdiction. *See id.* (citing 28 U.S.C. § 1367(c)(4)). Defendant suggests that Plaintiff's state law Unruh Act claim meets this strict standard because this state law claim—and the monetary relief available under the Unruh Act—predominate over Plaintiff's ADA claim. *See id.* at 17. Defendant further concludes that "the principles of economy, convenience, fairness, and comity" would be served if the Court declined supplemental jurisdiction over this case. *See id.* at 16. The only explanation Defendant offers, however, is that this case is still in its early stages. *See id.* at 16–17. Myriad courts in this district have considered and rejected such arguments because having parallel proceedings in two different fora would be needlessly inefficient. *See, e.g.*, *Johnson v. Medvill 1, LLC*, No. 18-CV-04150-LHK, 2020 WL 7696056, at *7 (N.D. Cal. Dec. 28, 2020) (collecting cases). The Court finds the reasoning of these cases persuasive and adopts it here. *Id.* The Court **DENIES** Defendant's motion on this basis, and exercises supplemental jurisdiction over Plaintiff's Unruh Civil Rights Act claim.

//
//
//
//
//

---

[1] The Court further informs defense counsel that the dismissive tone of its briefs was neither appreciated nor helpful to the Court in considering the relevant issues. The number of cases that Plaintiff or his counsel has filed is simply irrelevant to the merits of this case.

### III. CONCLUSION

The Court **DENIES** the motion. The parties are directed to meet and confer and file a joint status report indicating when they anticipate holding the joint site inspection. The parties shall file their status report by November 12, 2021. The parties are further advised that the initial case management scheduling order, Dkt. No. 5, will remain in effect.

**IT IS SO ORDERED.**

Dated: 11/4/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge